## Case No. 14,996.

UNITED STATES v. DUANE.

[Wall., Sr., 5.] [1]

Circuit Court, D. Pennsylvania. May 12, 1801.

CONTINUANCE — CRIMINAL LAW — COMMISSION TO EXAMINE WITNESSES.

Where the execution of a commission to examine witnesses, has been prevented by the acts or omission of the prosecutor or his agents, the defendant is entitled to a continuance, even if he be guilty of laches in taking out the commission.

[Cited in brief in Fisher v. Greene, 95 Ill. 95.]

This was a motion to put off the trial on the affidavit of William Duane. Upon the whole it appeared, that the indictment was found against him for a libel on the senate of the United States in October term, 1800, and continued on his affidavit that he was not prepared and had material witnesses who were absent, &c. In the same term, he applied to the attorney of the United States for the district, (Ingersoll,) to consent to a commission for taking the depositions of his witnesses, which was immediately assented to. The witnesses proposed to be examined were Wm. Bingham, Jacob Read, Uriah Tracey, Humphrey Marshall, James Gunn, Benjamin Goodhue, James Hillhouse, Nathaniel Chipman, Charles Pinckney and James Ross, all members of the senate of the United States. The defendant, however, took out no commission until about the middle of February, 1801, when a new application was made to Ingersoll, to assent to the issuing of the commission. This consent was given in writing, and commissioners named on each side, to wit: Charles Lee and Harrison G. Otis, for the United States, and John Mason and John Thomson Mason, for the defendant. The attorney for the district declined filing interrogatories on behalf of the United States. The commission was accordingly made out, and arrived at Washington about the 20th of February, and notice thereof given to the commissioners. Those for the defendant accepted, and Otis for the United States; (Lee declining to act.) The commissioners met and agreed upon a form of summons to the several witnesses, which, together with a copy of the interrogatories, and a request that they would de-

[1] [Reported by John B. Wallace, Esq.]

liver their answers in writing, and attend at a time and place fixed in the summons, was served on each of the aforesaid gentlemen of the senate. At the time appointed, none of the witnesses attended except Humphrey Marshall; and at the request of Mr. Otis, another time was agreed on for receiving the witnesses; but it did not appear that any notice of this second meeting was given to any witness, except Gunn and H. Marshall. The commissioners for the defendant attended according to the adjournment, but Otis did not; and on inquiring, it was found he had left Washington that day. The defendant then proposed to his commissioners, that they should request the witnesses to send their answers in writing to them; one of whom, (John Mason,) observed that this might be done, but he thought it would be ineffectual, as he conceived the commission could not be executed without one commissioner on each side. The defendant, however, waited on Marshall and Gunn, and requested them to send their answers to the commissioners or to seal them up, and intrust them to him to be delivered in court. They declined either, and Gunn declared he would not attend as a witness, unless compelled; and observed that as neither of the commissioners for the prosecution attended, the commission was no longer obligatory. The defendant waited in Washington until all the witnesses had gone. He further swore, that all those witnesses were material; in particular Gunn, Bingham and Pinckney; that he had intended to serve process on Bingham as a witness, but before process served, he unexpectedly embarked on board ship, and sailed to parts beyond sea. It appeared further, that many of the witnesses who had refused to attend the commission at Washington, came afterwards to Philadelphia; and that in particular, it was known to the defendant that U. Tracey was in Philadelphia, and yet no subpœna served.

Dickerson & Cooper, for defendant, insisted that Duane had used due diligence; and being deprived of the evidence necessary for his defence, by the refusal of the witnesses to attend, and the commission failing by the act of the commissioners for the prosecution, he ought not to be forced to trial this term.

Mr. Ingersoll, for United States, contended that the commission was a mere courtesy, assented to by him freely; and however defeated as to its object, the prosecution ought not to stop. That Duane had not proceeded on it for three months after October session. Had he taken it out in time, and the commissioners for the United States declined, a new one might have been sent to willing commissioners; but he delayed to the very rising of congress.

[See Case No. 14,997.]

Before TILGHMAN, Chief Judge, and GRIFFITH and BASSETT, Circuit Judges.

GRIFFITH, Circuit Judge. This indictment found in October last against William Duane for a libel on the senate of the United States, was then ready to be tried on the part of the public prosecutor. The defendant professed to be unprepared, and on his affidavit proving the allegation, the trial was postponed in his favor until this term. The public prosecutor is now ready to proceed, and the defendant again asks that the prosecution may be suspended until October next. His counsel have insisted with much earnestness upon some topics which are immaterial in law or unfounded in fact. His situation was represented as a hard one, owing to the obstacles in the way of procuring his evidence, such as the limited jurisdiction of the court not affording him compulsory process—the remoteness and dispersion of the witnesses, who, he alleges, will justify the truth of the libel—the improbability of his being able to bring the members of the senate, implicated in the libel, into court to criminate themselves. As to all these representations, whether true or false, they furnish no grounds upon which this court, sitting to try crimes committed, and found by a grand-jury within their jurisdiction, can act. The editor of a paper who deliberately publishes to the world a charge which immediately affects the character of an individual, or brings the government into hatred or contempt, should be prepared to prove an accusation voluntarily made, and, whilst subsisting, followed with private distresses or public calamity. He acts at his peril—he knows his authority. He knows, or should know, what aid he can have by law, to procure his evidence; he can foresee the hardship, (if there be one,) if not being able to get witnesses from other states, or authorised to compel men to furnish evidence against themselves. An offender would seldom be brought to trial, if his swearing to the materiality of witnesses out of the reach of the court, and showing some pains to procure their attendance, were grounds for its postponement. Where witnesses are out of the jurisdiction of the court, and there is no well-grounded expectation of procuring their testimony at another time, a trial is not to be deferred; for it is a standing requisite in such cases, and must appear on oath, that the party has a reasonable expectation of procuring their testimony at the next court. Now the defendant's affidavit is, in this particular, defective; and his counsel have said, that they do not expect the attendance of these witnesses. The defendant then, had he used the utmost diligence to procure the evidence of these witnesses, all residing beyond the process of the court, and not bound to answer interrogatories on a commission, must have failed in his application; but in fact there appears the greatest negligence even on this point. Mr. Ingersoll, the attorney for the United States, on the suggestion of the defendant that he was desirous of examining a number of senators, (the witnesses now

sworn to be material,) immediately, and at the last October term, consented he should take out a commission for that purpose. This was mere matter of favour, and certainly very liberal in the prosecutor. The congress met at Washington on the 17th of November, 1800. The defendant, instead of sending down the commission to take the answers of the witnesses, delayed even the issuing of it until the 16th of February, 1801, four months after it was agreed to, and three months after the meeting of the senate, and when they were about rising. At this time, his counsel made a new application to Mr. Ingersoll, to assent to the commission's then issuing, which he immediately complied with, and each party nominated two commissioners. The commission issued directed to the four commissioners, or any two of them, "one however being of each nomination." From this history, it is evident that the defendant did nothing to insure the success of his commission until the last moment. If the question then turned. in my idea of it, upon the general facts of the witnesses being beyond the process of the court and the diligence of the party, I should think there was not a shadow of right in favor of the motion. But I am of opinion that this application must prevail, because the commission which did issue on the 15th of February, was rendered abortive by the acts of the commissioners named on the part of the prosecutor. Those for the defendant accepted; Mr. Lee, one of the commissioners for the United States, declined; Mr. Otis, the other, took on him the commission, and met once; all the witnesses were summoned before them; none attended except Mr. H. Marshall, and an adjournment was agreed upon. Mr. Otis left town on the very day to which the business was adjourned; of consequence, the commission being joint, and requiring one of each nomination, could not be executed by the two commissioners for the defendant. It has been said the defendant lost no evidence by this; for the senators had refused to attend on the first summons, and it was well known, they did not mean to subject themselves to answer the defendant's interrogatories, and so well convinced was he of it, that he did not summon them to appear on the adjournment. The truth of this inference is not clear. Had Mr. Otis met the other commissioners, they might have executed the commission, at least in part; the senators might have been prevailed on to give in their answers. The act of the commissioner in departing, defeated any further prosecution of the commission. But the defendant's affidavit goes to establish a strong probability that he lost the testimony of General Gunn, by the departure of Mr. Otis. He swears General Gunn was a very material witness, and had promised to give in his answer, but that on waiting upon him to attend the commissioners on the adjourned day, he declined, and assigned as one of his reasons, "That the commissioners had no authority to proceed now that Mr. Otis was gone." If this representation be true, it does appear that the non-execution of the commission arose from the non-attendance of the commissioner on the part of the United States, and that too after he had accepted the office. On this ground, and on this only, I am of opinion the cause ought to be continued. In this view of it, it is evident that the requisites usually called for in the affidavit to postpone a cause, are not in question, as here the case turns not on the conduct and circumstances of the party calling for a postponement, but upon the omission and acts of the prosecutor or agents of the prosecutor, who insists on a trial. If I doubted in a case of this sort, that would determine me to allow the continuance, because attended with no inconsiderable inconvenience, and avoiding even the appearance of hardship; but the delay must be on the terms of the offer made by the defendant's counsel, to take a trial in October at all events.

BASSETT, Circuit Judge. I feel myself bound on this occasion, though with regret, to disagree with my brother. He has stated the facts relative to the conduct of the defendant, and admits that he has not only used very little diligence to get the commission executed, but on the contrary is chargeable with the greatest neglect. It is said, indeed, that from and after the 15th of February, he took some pains and was disappointed in the effect of his commission, by the departure of Mr. Otis from the seat of government. But why did he postpone it so long? He knew congress must rise on the 3d of March. Had he gone earlier in the winter, the commissioner for the United States would have been under no necessity of leaving the city; or if he did, another might have been substituted. A party who has once postponed a cause should not come again with such a story as this. He should show that he has done every thing in his power to perform. There will never be a trial of an offender, if such excuses are received. Besides, the affidavit is radically defective. It wants the asseveration that the party expects to be able to procure the attendance of the witnesses at the next court. This is an indispensable requisite; it is reasonable, and sanctioned by long usage, for if he does not expect to have their testimony, why delay the trial for their absence at this time; and his counsel have said they do not expect it. I think there is not sufficient ground for further delay, and therefore am against the motion.

TILGHMAN, Chief Judge. The defendant certainly has used very little foresight or diligence in getting the commission executed, which was with so much candour agreed to by Mr. Ingersoll in October term last. He delayed for several months; the only reason assigned for it is, that his counsel, Mr. Dal-

las, was to be at Washington in February, and he wished to avail himself of his attention on the execution of it. This may be so. It appears, however, that he took out the commission and had the commissioners nominated on the 15th of February, and from that time no laches are imputable to him; and in fact, he found all the witnesses whom he proposed to examine, at Washington. The commission is not executed or returned, and it appears that this has happened from the nonattendance of Mr. Otis, one of the commissioners for the United States. For this reason, I am of opinion a continuance should be ordered. Had the defendant not relied on the execution of the commission, he might possibly have used other means of procuring testimony, if he had any; and therefore ought now to have that opportunity. The ground on which I go, is the conduct of the commissioner for the United States, in defeating the commission, unintentionally no doubt, but with all the possible consequences of designed dereliction. It will be seen that I do not go upon the ground of the conduct of the defendant. His affidavit would be insufficient had he not shown irregularity in the proceeding of the other party. Much has been said relative to the hardship of drawing his justification from the lips of his prosecutors, the members of the senate. I deliver no opinion, whether they can be compelled to give evidence on this indictment. But the defendant has no right to complain of this. If he will libel men without any other means of proving the matter than from themselves, he takes the risk on himself. The defendant's counsel must take their motion, upon the condition, however, of a peremptory trial next term. Without this offer, I should be against the motion, as the commission was not of right.